UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| TRAVIS KLADIVO, | Civil No. 06-4924 (JRT/RLE) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT BELL INDUSTRIES, INC.'S MOTION FOR SUMMARY JUDGMENT |
| SPORTSSTUFF, INC. and BELL INDUSTRIES, INC., | |
| Defendants. | |

James S. Ballentine, **SCHWEBEL GOETZ & SIEBEN, PA**, 80 South Eighth Street, Suite 5120, Minneapolis, MN 55402; Brandon Barchus and Brian N. Mazzola, **LAW OFFICES OF DAVID E. BERNSEN, PC**, P.O. Box 822, Beaumont, TX 77704; David E. Bernsen, **MOORE LANDREY, LLP**, 390 Park, Suite 500, Beaumont, TX 77701, for plaintiff.

Dale M. Wagner, DongWook Kim, and Jessica Schulte Williams, **BASSFORD REMELE**, 33 South Sixth Street, Suite 3800, Minneapolis, MN 55402-3707, for defendant Bell Industries, Inc.

Julius W. Gernes, Scott H. Rauser, and Rodney A. Honkanen, **SPENCE RICKE SWEENEY & GERNES**, 325 Cedar Street, Suite 600, St. Paul, MN 55101, for defendant Sportsstuff, Inc.

Plaintiff Travis Kladivo suffered injuries resulting from an accident involving a Wego Kite Tube. Kladivo brought this product liability action against the Kite Tube manufacturer, Sportsstuff, Inc., and Bell Industries, Inc. ("Bell"), a Minnesota distributor, alleging strict liability, negligence, breach of warranty, and intentional and negligent misrepresentation. This case is before the Court on defendant Bell's motion for summary judgment. For the reasons discussed below, the Court grants Bell's motion.

# BACKGROUND[1]

Defendant Bell is a wholesale distributor of parts and products for marine and snow-based recreational vehicles. Bell purchased the Wego Kite Tube from manufacturer Sportsstuff and then sold the Kite Tubes to other dealers, including Shamrock Marina, the marina owned by plaintiff's family. The Kite Tube is an inflatable watercraft designed to be towed behind a power boat. The Kite Tube becomes airborne by pulling on handles that are attached to the floor of the tube. On June 25, 2005, Kladivo was being pulled on a Wego Kite Tube on a lake in Morrison County, Minnesota. Kladivo was riding approximately ten feet above the water. According to Kladivo, a sudden gust of wind pushed the Kite Tube twenty to thirty feet above the water, causing the tube to become uncontrollable, ejecting Kladivo from the Kite Tube, and slamming him into the water below. Kladivo alleges that he suffered severe injuries as a result of the crash, including a torn aorta, a collapsed lung, and a broken rib.

Bell marketed the Kite Tube by listing it in its product catalogues, and by including a flier or "stuffer" provided by Sportsstuff in product orders shipped to Bell customers. According to Bell, it had no knowledge of any warnings to consumers that may have accompanied the Kite Tube. Bell did not review warnings accompanying the Kite Tube, which would have been contained inside the Kite Tube box shipped by Sportsstuff and passed on to dealers. Bell does no independent testing or analysis of the

---

[1] For purposes of this summary judgment motion, the Court views the facts in a light most favorable to Kladivo, the non-moving party.

products that it sells.  Bell typically does not open boxes to inspect products, but passes them on directly to consumers.

Kladivo had used the Kite Tube between five and ten times prior to the accident in June 2005.  Kladivo had flown the Kite Tube up to twenty feet above the water on several occasions, at speeds of 30 to 35 miles per hour.  On one occasion prior to June 2006, Kladivo crashed the Kite Tube and suffered minor bruising to his elbow.  Several of Kladivo's family members had also crashed the Kite Tube, suffering minor injuries including a bloody nose, an injured knee, bruised ribs, and an injured ear.  Kladivo's father, Randy Kladivo, testified in deposition that the Kite Tube would often wobble and appeared unstable when people rode it.

Kladivo alleges that the Kite Tube is defective because the design requires the rider to be positioned in such a way that the center of gravity is above the lifting surface.  According to plaintiff's expert, this produces an "inverted pendulum" effect, so that when wind gusts cause the Kite Tube to pitch or roll, the weight of the rider above the Kite Tube causes it to pitch or roll even further, creating instability.  Plaintiff's expert stated that the defect could have been avoided by placing the rider below, instead of above, the aerodynamic lifting device.

Kladivo alleges that defendant Sportsstuff, the Kite Tube manufacturer, knew about the design flaw prior to releasing the Kite Tube for sale.  According to Kladivo, Sportsstuff later designed a "three point tow system" to reduce the Kite Tube's instability.  Kladivo cites to an internal Sportsstuff email stating, "[t]here has been a lot of injury reports from the kite tube."  (Kladivo Dep., Ex. 175.)  Kladivo testified that he

was not aware of the availability of the triple tow rope to make the Kite Tube more stable, nor was he aware that Sportsstuff had created a warning label indicating that the three point tow rope would make the Kite Tube more stable.  In July 2005, Sportsstuff voluntarily recalled the Wego Kite Tube following reports of serious injury and two reported deaths involving the Kite Tube.

Kladivo filed this product liability action on November 17, 2006.[2]  Kladivo alleges that defendants Sportsstuff and Bell were negligent in the design, manufacture, testing, and distribution of the Kite Tube, and that defendants are strictly liable for injuries resulting from the defective design of the Kite Tube.  Kladivo further alleges that defendants breached express and implied warranties, negligently failed to recall the Kite Tube sooner, and intentionally and negligently misrepresented that the Kite Tube was fit for inexperienced amateurs despite their knowledge that the Kite Tube was extremely dangerous.  On November 28, 2007, defendant Bell filed the instant motion for summary judgment.

On December 31, 2007, defendant Sportsstuff filed Chapter 11 bankruptcy in the District of Nebraska.  On April 28, 2008, the bankruptcy court issued an order staying the commencement or continuation of court proceedings against Sportsstuff, including the instant action.  The court order also stayed litigation against parties that issued insurance policies under which Sportsstuff is a beneficiary, parties that are co-insureds with

---

[2] On May 8, 2007, Kladivo amended his complaint and added Bell Industries as a named defendant.

Sportsstuff, and any parties that have contractual indemnification agreements with Sportsstuff.

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### II. STRICT LIABILITY

Bell first argues that summary judgment is appropriate on Kladivo's strict liability claim because Minnesota Statute § 544.41 mandates dismissal of such claims against non-manufacturer defendants in circumstances applicable here. Kladivo responds that manufacturer Sportsstuff's Chapter 11 bankruptcy precludes dismissal under § 544.41.[3]

---

[3] Kladivo also argues that the fact that co-defendant Sportsstuff has filed bankruptcy in the District of Nebraska necessarily stays this litigation as to Bell. However, a bankruptcy stay under 11 U.S.C. § 362(a) extends only to claims against the debtor, and "the stay is not available to nonbankrupt codefendants, even if they are in a similar legal or factual nexus with the debtor."

(Footnote continued on next page.)

Minnesota courts hold the *manufacturer* of a defective product strictly liable in tort for injuries resulting from the defect. *See In re Shigellosis Litig.*, 647 N.W.2d 1, 5-6 (Minn. Ct. App. 2002) (noting that strict liability in tort developed from "strong public policy considerations to protect consumers from harm caused by defective products and to impose the cost of defective products on the maker, who presumably profits from the product"). An injured plaintiff may also maintain a strict liability action against the commercial *seller* of the defective product, "even if the seller has no active fault or negligence." *Id.* at 6. However, Minnesota Statute § 544.41 – the "seller's exception" statute – creates a limitation on liability for passive sellers and other non-manufacturers in product liability actions. *Id.*

Under § 544.41, subd. 2, once a plaintiff has filed a complaint against the manufacturer, "the court shall order the dismissal of a strict liability in tort claim against the certifying defendant."[4] Any time "subsequent to dismissal," the plaintiff may move to vacate the order of dismissal and reinstate the certifying defendant, provided the plaintiff can prove "that the manufacturer is unable to satisfy any judgment as determined

---

(Footnote continued.)

*Croyden Assocs. v. Alleco, Inc.*, 969 F.2d 675, 677 (8th Cir. 1992) (internal quotations omitted). Nor do the terms of the bankruptcy court's order granting Sportsstuff's automatic stay require that this action be stayed as to Bell. That order applies only to entities that issued insurance policies under which Sportsstuff is a beneficiary, to Sportsstuff's co-insureds, and to entities with contractual indemnification agreements with Sportsstuff. Kladivo has set forth no evidence showing that Bell falls within any of these three categories.

[4] Where the product manufacturer is not initially identified by the plaintiff, the statute requires a non-manufacturer defendant to "certify" the correct identity of the manufacturer. Minn. Stat. § 544.41, subd. 1. Once the manufacturer is identified, the certifying defendant is dismissed.

by the court," or "that the manufacturer would be unable to satisfy a reasonable settlement." Minn. Stat. § 544.41, subd. 2(d).  However, the Court may not dismiss the certifying defendant if (1) the defendant has exercised some significant control over the design or manufacture of the product, or has provided instructions or warnings to the manufacturer regarding the defect; (2) the defendant had actual knowledge of the defect; or (3) the defendant created the defect.  Minn. Stat. § 544.41, subd. 3.  In other words, if the seller is not truly passive, dismissal is not appropriate.  The seller's exception statute is intended to "temper[] the harsh effect of strict liability as it applies to passive sellers, while ensuring that a person injured by a defective product can recover from a viable source."  *In re Shigellosos Litig.*, 647 N.W.2d at 6.

The Court agrees with Bell that the plain language of the seller's exception statute requires dismissal without prejudice of Kladivo's strict liability claim against Bell.  Here, defendant Sportsstuff, the Kite Tube manufacturer, has been properly identified and served by Kladivo, mandating dismissal of Bell as a non-manufacturer co-defendant.  *See* Minn. Stat. § 544.41, subd. 2.  At this time, the Court finds that Kladivo is unable to make the requisite showing that Sportsstuff is unable to satisfy a judgment or a potential settlement.  While Sportsstuff's Chapter 11 filing requires that pending litigation against it be automatically stayed, *see* 11 U.S.C. § 362(a), it does not prove that Sportsstuff will be unable to satisfy a judgment or settlement once the stay is lifted and Kladivo's action resumes.  *See In re Gibson Grp., Inc.*, 66 F.3d 1436, 1442 (6th Cir. 1995) (stating that Chapter 11 bankruptcy provides the debtor with an opportunity to reorganize and to provide creditors with going-concern value rather than the possibility of a more meager

satisfaction through liquidation); *In re Bonner Mall P'ship*, 2 F.3d 899, 916 (9th Cir. 1993) (noting that the primary purpose of Chapter 11 is successful debtor reorganization and maximization of the value of the estate). However, upon a showing that manufacturer Sportsstuff is unable to satisfy a judgment or settlement, Kladivo may subsequently move this Court to vacate the instant order of dismissal and reinstate Bell as a co-defendant in this action. *See* Minn. Stat. § 544.41, subd. 2(d),(e).

Nor has Kladivo demonstrated that Bell is a non-passive seller of the allegedly defective product, such that dismissal would be precluded pursuant to the exceptions of § 544.41, subd. 3. Even viewing the facts in a light most favorable to Kladivo, the Court's review of the record reveals no evidence suggesting that Bell exercised any control over the design or manufacture of the Kite Tube, or that it provided instructions or warnings to Sportsstuff regarding the alleged defects in the Kite Tube. Kladivo has not pointed to any evidence in the record to support the conclusion that Bell had actual knowledge of the alleged defect. *See Masepohl v. Am. Tobacco Co.*, 974 F. Supp. 1245, 1254 (D. Minn. 1997) (finding that possession of information commonly known by the public regarding risks of a product is not sufficient to impute actual knowledge to a defendant under the non-passive seller exceptions). Finally, the Court finds no evidence showing that Bell created the alleged defect in the Kite Tube. Instead, the record demonstrates that the Kite Tubes merely passed through Bell – in unopened boxes – en route from Sportsstuff to Bell's consumers. As such, the Court finds that Bell is the type of passive seller to whom the seller's exception statute was intended to apply.

Accordingly, the Court grants Bell's motion for summary judgment with respect to Kladivo's strict liability claim.

## III.   NEGLIGENCE

Kladivo alleges that Bell was negligent in the distribution and sale of the defective Kite Tube.  In a product liability action, "a negligence claim against the distributors require[s] proof that they had knowledge of the products' condition and the risks involved in that condition."  *Willmar Poultry Co. v. Carus Chem. Co.*, 378 N.W.2d 830, 835 (Minn. Ct. App. 1985).  As discussed in the context of Kladivo's strict liability claim, however, Kladivo has set forth no evidence that Bell exercised any control over the design or manufacture of the Kite Tube, or otherwise had knowledge of the alleged defect that caused the injury.  *See id.* (dismissing negligence claim against distributor where plaintiff failed to produce evidence showing the distributor knew that warnings provided by manufacturer were inadequate).  The Court therefore grants Bell's motion for summary judgment on Kladivo's negligence claim.

## IV.   BREACH OF WARRANTY

Kladivo next alleges that Bell provided express and implied warranties that the Wego Kite Tube was in good condition, was free from all dangers and defects, and was safe to use for the purposes intended.  Kladivo alleges that Bell's sale of a defective product breached these express and implied warranties.

A breach of warranty claim requires the plaintiff to prove (1) the existence of a warranty, (2) a breach, and (3) a causal link between the breach and the alleged harm.

*Peterson v. Bendix Home Systems, Inc.*, 318 N.W.2d 50, 52-53 (Minn. 1982). With respect to an express warranty, Bell argues that there is no evidence supporting Kladivo's contention that Bell provided an express warranty as to the Wego Kite Tube. The Court agrees. Kladivo has pointed to no evidence in the record showing express statements or representations by Bell as to the condition or safety of the Kite Tube, much less any written statements from Bell arising out of the sale of the Kite Tube. *See Masepohl*, 974 F. Supp. at 1252-53 (noting that under Minnesota law an express warranty is generally a written statement arising out of a consumer sale, though it may also include advertisements that "contain very specific claims and promises as to how a certain product will perform"). With respect to Kladivo's breach of implied warranty claim, Minnesota courts have held that "[s]trict products liability has effectively preempted implied warranty claims where personal injury is involved." *See id.* at 1253 (finding that an implied warranty did not exist between a distributor and retailer where the distributor did not alter the products in any way).

For these reasons, the Court grants Bell's summary judgment motion with respect to Kladivo's breach of warranty claim.

## V. NEGLIGENT RECALL

Kladivo next alleges that Bell was negligent in failing to recall the Kite Tube. Minnesota courts have not recognized a cause of action for negligent recall, however. *Hammes v. Yamaha Motor Corp. U.S.A., Inc.*, No. 03-6456, 2006 WL 1195907, at *11 (D. Minn. May 4, 2006) ("[N]o Minnesota case has imposed a duty upon manufacturers to institute a product recall or retrofit."); *McDaniel v. Bieffe USA, Inc.*, 35 F. Supp. 2d

735, 743 (D. Minn. 1999) (finding Minnesota courts would likely refuse to impose a duty to recall a defective product because the majority of jurisdictions have rejected such an obligation). Moreover, as with Kladivo's other negligence claims, the record contains no evidence showing that Bell had actual knowledge of the allegedly defective condition. The Court therefore grants Bell's summary judgment motion on Kladivo's negligent recall claim.

## VI. INTENTIONAL, NEGLIGENT, AND FRAUDULENT MISREPRESENTATION

Finally, Kladivo alleges that Bell intentionally, negligently, and fraudulently misrepresented material facts relating to the character and quality of the Kite Tube. Under Minnesota law, a claim for fraudulent or intentional misrepresentation requires a showing that there was (1) a false representation by a party of a past or existing material fact susceptible of knowledge, (2) made with knowledge of the falsity of the representation or made of the party's own knowledge without knowing whether it was true or false, (3) with the intention to induce another to act in reliance thereon, (4) causing the other party to act in reliance thereon, and (5) causing pecuniary damage as a result of the reliance. *See Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 532 (Minn. 1986). Minnesota has also adopted the following definition of negligent misrepresentation, as provided by Restatement (Second) of Torts:

> One who, in the course of his business, profession or employment, or in a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Bonhiver v. Graff*, 248 N.W.2d 291, 298-99 (Minn. 1976); *see also Florenzano v. Olson*, 387 N.W.2d 168, 173-74 (Minn. 1986) (noting that a misrepresentation is made negligently "when the misrepresenter has not discovered or communicated certain information that the ordinary person in his or her position would have discovered or communicated").

Bell argues that Kladivo has failed to set forth any evidence showing that Bell made representations regarding the safety or general fitness of the Kite Tube.[5] Based on this Court's review of the record, the Court agrees that Kladivo has not shown that Bell made any representations or statements to the public or its dealers regarding the Kite Tube's safety. Further, as discussed in the context of Kladivo's strict liability claim, Kladivo has not demonstrated that Bell had any knowledge of the alleged defect in the Kite Tube. Thus, even if Kladivo could show that Bell made specific representations regarding the Kite Tube's safety, the Court finds insufficient evidence in the record demonstrating that Bell either knew those statements to be false, or failed to exercise reasonable care in obtaining or communicating such information. For these reasons, the Court grants Bell's motion for summary judgment on Kladivo's misrepresentation claims.

---

[5] Kladivo has not responded to Bell's argument as to his misrepresentation claims. Indeed, Kladivo's responsive memorandum focuses exclusively on whether his strict liability claim should be dismissed pursuant to Minn. Stat. § 544.41.

- 13 -

## ORDER

Based on the foregoing, all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that defendant Bell Industries, Inc.'s Motion for Summary Judgment [Docket No. 51] is **GRANTED**. **IT IS FURTHER ORDERED** that:

1. Count II (Strict Liability) of plaintiff's Amended Complaint is **DISMISSED without prejudice** as to defendant Bell Industries, Inc.

2. The remaining counts of plaintiff's Amended Complaint are **DISMISSED with prejudice** as to defendant Bell Industries, Inc.

That there being no just reason for delay and upon an express direction for the entry of judgment, **LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: September 2, 2008
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____
JOHN R. TUNHEIM
United States District Judge